Case number 25-2104 Dennis O'Connor v. Rachael Eubanks et al. Argument not to exceed 15 minutes per side. Mr. Ellison, you may proceed. Thank you. Phillip Ellison on behalf of the appellant, I'm reserving three minutes for rebuttal. Fine. Thank you. Your Honors, I think the case can be most nearly decided today on the law of the case doctrine under O'Connor 1, in which this court held previously that due process is required in these circumstances. On remand, the district court didn't heed this court's instruction and instead followed Texaco, finding that in a passive interest abandonment setting that the Texaco doctrine applies in these circumstances, and we believe that to be an error. Can I ask you a question about the claims, because I'm just trying to follow? There's a claim that there was no notice given, I'll call it before the principal is taken, appropriated, placed in custody. I don't know. I know it's all a loaded term for this case, but you know what I mean.  Is there a separate claim for the interest that the state earns, or is that damage from holding the principal without notice? I guess that's what I'm wondering. The short answer is both, and the reason why that is, and I know that's the most unhelpful answer as possible, but the reality is that the state's position keeps changing as to what the nature of the ownership interest is of the original owner when this property is changing possession from the holder, the previous business, and when it comes into possession of the state. Okay, I got that. I'll let you go, but for the possibility of a stand-alone procedural due process claim with respect to the interest, I'm having trouble understanding what the process... So in O'Connor 1, I think we recognize that there's a property interest in the interest, let's say that.  But we leave it to the district court to deal with the process that's due, and we can talk about, and the district court eventually says, oh, under Kemmerer, you just don't have an interest anymore. Okay. What would be the process, though, let's assume you're right, what would be the process that you would be due with respect to the interest only? In other words, would the state have to tell you, like, oh, by the way, we just earned another 5% on your money, or we just earned 10% on your money, you better come and get it? Is that what it is? So the way I frame this in my mind is we need to figure out when precisely the deprivation occurred by the state. And it's our theory, our count 5, because all that's left in this case is count 5 and count 6 of the second amended complaint. Count 5 is the interest claim, and it's our theory that the state is holding on to the money. There's, you know, all this money that they've collected that belongs in our theory, and as we point out on page 10 of our reply brief, even the state's own website says, Treasury takes custody of this property, never assumes ownership. So we've worked under the framework that this money is in the general property or the general fund of the state, which generates interest. When a former property owner comes and makes a claim for the principal back, at that point we think the state is depriving them at that point. Before depriving a claimant of their interest, you have to give notice and the opportunity to be heard. On the fact that they're going to deprive you of interest? Correct. So at the time that they give you the property back, then they should say, Oh, by the way, we are going to keep any interest that we've earned? Correct, correct. Now, the pushback from this, now this is where I want to... That sounds like kind of a dressed-up takings claim. It's close, it's close. I will be the first to admit it. I understand why you would want to make a dressed-up takings claim, but maybe it's better understood as an actual damage from the holding of the principal. That theory to me maybe makes some more sense, but it's your case. Well, it's both, and that's why we've outlined in our response brief, because we're here slightly under unusual procedural circumstances, because the district court judge denied the state's motion for summary judgment by adopting our theory, and then on a motion for reconsideration said, Oh, forget everything I just said, everything found in favor of Dr. O'Connor, and instead we're going to follow the Texaco. So the most narrow grounds this court could come back with right now is to say the motion, the decision in the motion for reconsideration was wrongly decided, premised on Texaco. Go back to your decision on the motion for reconsideration. We have not moved for summary judgment ourselves yet. We're still in the midst of discovery. We haven't had a class discovery yet, and so we want to be able to pinpoint exactly where the deprivation occurred, because all of this is occurring. But the interest, I'm sorry, the reconsideration was essentially on the principal, what I'm calling the principal claim, right? The claim on the principal, not the interest. The principal. The principal, the principal claim. This is going to turn into a Judy. I want to get to, so when you two are done, you can let me know. Okay. I am troubled, before we get to what you two are talking about, I am troubled by why we should say law of the case, which is what you started out saying. Yes. When the Michigan Court of Appeals has decided the Kemmerer case after O'Connor won that we decided, and the Michigan Court of Appeals said, in a sense, we are wrong. The Sixth Circuit is wrong. Kemmerer says this is an ownership situation, not a custody situation under Michigan law. And the Michigan Supreme Court denies review. My understanding of Michigan law is that that means that the Michigan Court of Appeals, which is one court of appeals, unlike Ohio where we have 13 or so, there's one court of appeals. And when the Michigan Court of Appeals speaks in a published opinion, it is supposed to be the law of Michigan until it's overturned by the Michigan Supreme Court. So I don't understand why we would follow law of the case of the Sixth Circuit when subsequently the Michigan Court of Appeals has said that the Sixth Circuit is wrong. Now, we may think we were right, but they say we're wrong. And it's not like your typical eerie question where we don't have a Supreme Court decision and we've got 13 courts of appeals in Ohio, which can go every which way. But we have one court of appeals in Michigan that has said what the law of Michigan is on this, that it's ownership by Michigan, not custody. I have two responses to that. First of all, well, I actually have two and a half responses to that, let me say. My half response is I think Kemmerer was wrongly decided. But fair enough. We said the opposite.  So set aside my .5 argument as, you know, Phil Ellison, the personal opinion of. But as the advocate, I would make two arguments. One is the state court decision was based on state court claims that were made under the Michigan Constitution. And they made certain decisions there. This court can decide what the property interest for purposes of the federal constitution, which is why we have 1983 as the basis. I would point this court to Hall, the takings cases I've argued. At some point I've argued in front of everybody. But in our due process cases, we always say we look to, I mean, state law. There's a federal floor, okay, under Hennepin County. I agree. But we generally look to state law to define the property interest, right? That's correct. And what you look to is not the Michigan Court of Appeals. And this goes to my second answer to you. It's not the Michigan Court of Appeals you look to. You look to the Michigan Supreme Court. But to Judge Moore's point, I mean, if under, let's say under the Rules Decision Act, if it were a diversity case, we would look at the laws of the state, right? So if we apply that same principle, by court rule, Michigan has said the law of our state includes published opinions by the Michigan Court of Appeals. Yes. If that's the position that this panel wants to take, then the controlling case is Flint Cold Storage. Because our procedural rules in Michigan is you look to the first published case on that topic. And the first published case on that topic in Flint Cold Storage said this is a custodial ship. You don't become owners of the property when it's in the unclaimed property program. Kemmer, for whatever reason, just ignored Flint Cold Storage. It was bound by Flint Cold Storage. The Michigan Supreme Court has spoken in Vito, in Brown, in Grand Rapids. I've got all the cases in the brief there. They have spoken on all of these details. So I think the real reality is this court gets to decide not property interest based on what Michigan panels decide, but what Michigan law provides. And Michigan law, and of course the law in Michigan is the source itself, is merely one piece of independent external information to decide what the property interests are in these circumstances. When you say what Michigan law provides, what do you mean by law in that statement? So what I, so the question I think, Judge Nel Bandy, I think the question he's getting to is how, who decides what the property interest is? I think is what the, is really what we're. Can I ask you a question what you meant when you say Michigan law? So if this panel, my point was is that if Michigan, this panel looks to Michigan law to decide any aspect of this, to decide whether Kemmer is controlling, Kemmer can't be controlling as a matter of law because the rules in Michigan is the first published case controls the law in Michigan, and Flint cold storage was the first decision in this. Now I don't think this court needs to follow. I think this court needs to follow Connor 1, is what of course, and I would also point to Hendershot obviously as well because that undercuts. I thought that was dicta. Respectfully, I don't think it is, but my position is that the federal, I'm sorry, I didn't mean to interrupt. So the reconsideration opinion from the judge, Judge Edmonds, again, on the first claim, the principle claim, the claim about principle, doesn't really rely on Kemmerer though, from what I can tell. It doesn't really say Kemmerer changed anything. All it says is, if I remember correctly, is, hey, I thought about it again, and basically I'm supposed to decide what process is due, and the process that's due is Texaco, meaning the statute, without relying on any argument from Kemmerer, right? I mean, would we have to even deal with Kemmerer for the first claim? So this is difficult. This is difficult to navigate because the real reality is that we're arguing step two, I think, about what processes do when we need to define what is the interest and what's being deprived. Because at its core, our main claim is actually they're depriving of interest. Now what we got into the case, what we discovered was, is the state may have spent the principle already. And if they'd spent the principle, there would be no interest that would generate, or in the example you pointed to, if you spent the principle, the damage for the due process would be the amount of the interest because the state has given themselves an interest-free loan. Where we're struggling right now is the state came in and argued we win under Kemmerer, and didn't get much further than that. The real reality is that we've got to get to the heart of what is the property interest and when was that property interest, if I may, was deprived. And the reality is that the deprivation we think occurred for the interest occurred when Dr. O'Connor made his claim and was denied that interest without noticing the opportunity to be heard. If we're wrong about that and the principle has been spent, then that's a whole different bag of apples that we're going to need to sort out. And, of course, we never got that deep into this because the state moved for summary judgment solely on Dr. O'Connor's claims, and, of course, it's well established in the record Dr. O'Connor was given no notice anywhere at any point in any part of this process, regardless of which one is the one that actually effectuated the deprivation. Okay, your time is up, but I do have a question. Yes. Because you relied on Flint cold storage. Correct. Am I correct in looking at the briefs that the Flint cold storage case is a Michigan Court of Appeals case? A published Michigan Court of Appeals case, correct.  But are you saying then that under Michigan law, the Michigan Court of Appeals cannot reconsider a prior decision that it itself made? They're bound by that. That's rule MCR 7.21. Can you start again? It's MCR 7.215. Is there a sub-letter? I want to say it's J, but it's J or I, or it's right there at that point right there. The second panel is bound by any principle of law established by a published decision by the Michigan Court of Appeals rendered after November 1, 1990. Okay, so it's not then acting as though it were the Supreme Court of Michigan. Correct. Because the Supreme Court of Michigan clearly could overturn one of its decisions, or is there a Michigan rule that I'm not aware of that says the Michigan Supreme Court can't overturn itself? The Michigan Supreme Court can overturn itself, most definitely. Now the reason, I can only speculate because the Supreme Court didn't actually explain its denial. One of the theories of where its denial could have been is that Flint cold storage is the first to establish the principle of the case. The principle of the case is the same as R. Brown and Grand Rapids and other cases like that. And also, I would point to the Michigan Court of Appeals decision Starblat too, but those are all decisions that laid out what the interest is in these circumstances. And we have Kemmer that, I can't figure out what they were doing in Kemmer, but at the same time, that can't be the binding law of Michigan because these prior cases established the principle going forward. It's like an odd thing for the Michigan Supreme Court not to clarify the situation given that this is a major issue for the state of Michigan. I agree. I wish they would have. But at the same time, I get no, it's not my call, of course, about whether an application, it's all, our Michigan. I'm just observing. Fair enough. But Michigan, of course, Michigan Supreme Court acts the same way as the United States Supreme Court as they take all of their cases with the exception of a very few small ones on discretionary applications for leave. There's no mandatory appeal. So this wasn't, as Michigan law is clearly established, a decision to deny an application is not an affirmance of the Michigan Court of Appeals theory, opinion, opinion of the case. It just simply leaves it remanded with all the rules that are in place. And, of course, one of the rules in place is Flint cold storage and Starblatt control. Thank you. Unless the panel has any other questions. Thank you very much. Judge Moore, can I ask one question? Certainly. Can I, I want to skip all the way back to the beginning, when Judge Nalbandian was asking you about the interest and how it would work under a due process analysis. Why wouldn't we just analyze that under Texaco and try to determine if it looks more like a passive statutory lapse framework like in Texaco? Because it doesn't seem to me, unlike the principle, that the state is, you could argue, actively seizing, although it might not, the state might just be holding it in custody as we've discussed. The interest, there's no active state taking anything from you, as I would think about it. That's, I'm not trying to use the word taking as to a taking clause. Sure. Claim. But why wouldn't you lose on that because it's analogous to Texaco and a passive mechanism? So my answer to that, and I'm assuming he can hear me okay? Yeah, I can hear you loud and clear. All right, fair enough. You're a speaker on the podium right here. The answer is, is that in order for Texaco to apply, the predicate for Texaco is that there was an abandonment of property interest. And one of the problems that we have in this case is, I can point to the screenshot on page 10 of my reply brief, is Dr. O'Connor didn't abandon anything. And he didn't abandon anything by inaction or long-term use. The only way Texaco would work is if this panel was to accept that there is some sort of statutory abandonment theory that allows the state to assume title at that point, the transfer of title. What we have, our position is, which is consistent with, and I would point this court to Marin, I'd point this court to O'Connor one, Sarajewski, all the federal courts have looked at this, have said this is not an eschete abandonment statute. This is a change of custodial ship style case. And because no title or abandonment occurs, Texaco simply does not apply. Okay, thank you. Thank you. Good afternoon. May it please the court, James Allen Ziemer, appearing today on behalf of the appellees, Rachel Eubanks, Terry Stanton, and the State of Michigan. I just want to jump right in and answer some of the questions that have already been asked. To the extent there's a procedural due process question here, our position would be it's at the intake. It's not this amorphous when the state's depositing or investing funds, as your questions were leading to, consistent with analysis from other circuits. It's going to be at the intake stage if there's the intake, when the state's receiving the money or obtaining the money. That's when, to the extent there's going to be a procedural due process question, our position is that's when it would be due. When the property goes from the holder, the bank or the insurance company, to the state, that's when you think there's a time for a due process notification. To the extent one is due, that's when we would be looking. And on that question specifically, to the extent this court rejects Texaco, we are relying on Anderson National Bank fee luck, the Supreme Court's decision in that case, which analyzed, it relied on three factors to satisfy the procedural due process. Notice of the statute, the state taking possession of the funds, and also posting on a courthouse doorstep of what was going to be acquired by the state. In that respect, no, we do not have the posting under Michigan law. What the Michigan law does provide for is the holder to send individualized notice to those owners. I understand that's not the state sending the notice, but that does point to why individualized notice here would be futile by the state, because the holder already did it if the creditor here didn't, like O'Connor, didn't step forward and try to retrieve their funds or didn't answer. I'm sorry, I'm just, I'm confused. I thought in O'Connor one there was no notice. Are you saying there's no state notice, but the notice that the holder gives because they have to identify the person, right? The state does not send individualized notices at all. The act does not require that. The notice that is provided is notice of the statute. Holders do send individualized notices, and under Anderson National Bank, they also look to the state actually obtaining the funds as notice, constituting notice to satisfy procedural due process to uphold the presumption of abandonment, deeming the property abandoned, and the state obtaining custody of the property. So to the extent... So the notice that happens then, sorry that we're belaboring this, is that O'Connor had these two items that were being held by some entity that could not find him because otherwise they would have sent the money to him, right? They tried to send the money to him. That's how we ended up here. Right, and so they tried to send him the money, which was through a notice of some kind, an individualized notice to him, and he didn't respond. And the three years or whatever passed and the money went, the assets went to the state. Two parts, Your Honor. Number one, they sent him the check. So this was a debt obligation reduced to a check. They sent him a check. It was never cashed. He never responded, never followed up and said, hey, can you please pay me my money? Before the three years lapsed, the holder indicates on what they reported to the state that they sent the individualized notice that's required by state law before turning the money over to O'Connor. Now, I don't have a copy of the notice. I can't verify that they did. They just indicated that they did. What we're relying on, and we put this in our brief, is that notice of the statute itself, given the context, is sufficient to satisfy the procedural due process question here. Well, notice of the statute, you mean like every citizen is supposed to know the law of Michigan? They are charged with knowledge of laws affecting their property and the disposition of their property. That's well established precedent. That's our position. So that's Texaco, right? Yes, we're taking the position that Texaco, in conjunction with custodial esteem precedent, renders the result that notice here is satisfied. The procedural due process requirements are satisfied by notice of the statute itself. So there doesn't have to be, in your view, any publication in a newspaper of great circulation that the asset, which was, as you're explaining it in O'Connor's case, a check that was sent to him but that he never cashed, that the asset is going to go to the state. And I'm not using the word custody or escheat or ownership or anything else, but you're saying on the notice point. On the notice point, no, not pre. Now the state does provide that post deprivation. It puts it on the website, but we're using pre-deprivation. What does the state put on the website? I apologize. Sorry, what does the state put on the website? So the state, one, puts a statewide publication, I believe biannually, of all properties that it has on claimed property, referring people to the website. But the website is all the properties, about $50 of value. You can search by name. You don't have to scroll through every single property individually. Scroll by name, scroll by holder. If you believe you had property reported by somebody, you can trigger it that way. It's completely searchable, and it's intertwined nationally with the national search feature for all states. So I know by happenstance for Ohio that there is a listing. The newspapers often will say, hey, the state of Ohio has got a whole bunch of people who happen to claim their property, and you can check your name and see if you've got something unclaimed. Correct, and we do that. Because Michigan's the same. Correct, after it already has the money. So I guess one question that the prior argument, vis-à-vis your opponent is dealing with, is what kind of notice is there of any interest issue? And it sounded like there is no notice, no special notice about ----  Yeah. Zero. And part of this, Your Honor, is the Act provides for the complete and permanent sheet of any interest. It's not operating that the state is obligated to provide that notice. The Act is treating that as the state's property. So who do you think is right, Kemmerer or O'Connor I? I believe Kemmerer, Your Honor, and actually I don't want to be out of line. I believe there's a misunderstanding at the core of this matter of what the property is. The property here is a debt obligation. There's two parties to that debt obligation, a creditor and a debtor. The creditor has the right to make and demand payment. They do not have a right to the debtor's bank account. O'Connor never lost his property right to make and demand a payment. That right was conserved under the Act. The holder had money in its bank account that it was earning interest on that would otherwise be used to pay a lawful debt. They're the party that lost something. That is what the state's acquiring. The state's acquiring title to the money that's being remitted by the holder. Not to the debt obligation. It's still obligated to pay O'Connor money. As Anderson National Bank put it, it is substitution of a debtor. Couldn't we already resolve in O'Connor I that there was a property interest in the principal? This Court didn't. Respectfully, that's why we turned to Kemmerer. There is a published state court decision saying that the state has ownership here. I was just simply, if this Court's not willing to entertain it, I'm not going to waste time on it. No, no, no. You could tell that I am very much troubled by what to do with Kemmerer. You are saying that on the merits of the issue, as between the Sixth Circuit, O'Connor won, and Kemmerer, you think Kemmerer is the correct answer, correct? We believe so, yes, Your Honor. Okay. So your opponent then was telling us, well, Kemmerer couldn't be what it is because of Flint cold storage. Because under Michigan law, the Michigan Court of Appeals cannot overturn its prior precedent. How do you respond to that argument? Well, the good news is both opposing counsel and myself argued Kemmerer. Is that good news? Excuse me. And I can say definitively we discussed Flint cold storage at argument and in the briefs. The language being relied on by O'Connor, in this case, from Flint cold storage was dicta. And it wasn't binding on the Michigan Court of Appeals moving forward. And the Michigan Court of Appeals rejected that trust premise, that the state is serving as a trustee. It's not a fiduciary in any respect with the unclaimed property. That answers that question. Why is it though, let's assume Kemmerer is correct. And why is it, why is Texaco still the way to go? Because it seems to me that even if Kemmerer is correct, that there's much more state involvement here than there was. I mean, the key in Texaco was there's a transfer of title between two private parties just by operation of law. Here, the state has to be involved with the holder and has to take the money and then sells the money. If it's not money, it's property, they have to sell it. I mean, there's a lot more state involvement, it seems to me, that that would trigger a procedural due process obligation whereas in, even under Kemmerer, whereas in Texaco, there wasn't any state involvement at all in the transfer of the property. Sure, and I believe, if I'm not answering your question, please tell me. But part of why we're relying on Texaco so much directly with O'Connor is it's a pleading requirement. We have a presumption of abandonment, and he's admitting in his pleading that presumption was met. And he relies on common law abandonment, but the Michigan Court of Appeals held common law abandonment is not part of this inquiry at all. So if he's admitting the abandonment, then there is no due process due. Our position is, if he would have pled it differently, if he would have contested the presumptions of abandonment, then we're in a different posture here. And then those issues would be live. But since he's already admitting it was abandoned under the statute, he doesn't have any due process rights to complain of because he abandoned it. Okay, so he, in your view, admitted he abandoned the property? Yes, Your Honor. Unless this Court has any other questions for me, the one final point I'd point out. I have one, if I may. I am sorry if I forgot. Did Kemmerer discuss, since you said the brief discussed plain cold storage, I didn't see, and I might not recall it correctly, where Kemmerer discussed it. Did it say it's dicta? Did it say it's not bound by it? I just don't recall that.  They did not explicitly state it in the holding. We did argue about it at oral argument and in the briefs, but the Court did not explicitly reject or hold that it was dicta. Did they ever even reference it in the opinions? No, Your Honor. Okay. I don't believe so. One final point. Do you agree with your friend on the other side that a later panel can't overrule a previous panel under Michigan law? I know you have one court of appeals, but the one court of appeals can't overrule itself. Can only the Supreme Court do that? For decisions published after, I'm going to get it wrong. It's 1991 or 1993. I believe Mr. Ellison was correct on giving the date, but generally correct. It's the Michigan Supreme Court that can overturn a published decision of the Michigan Court of Appeals. But the Michigan Court of Appeals is not bound to follow dicta from a prior decision. So the big question then is, was the Flint statement, whatever it might have been, dicta or a holding? To the extent it was required to be followed under Michigan law, yes. That would be the answer to that question. I see that I'm getting close to running out of time. I did want to just reemphasize our position as I started this. To the extent there was a procedural due process question here, it would be when the state is obtaining custody. Rachel Eubanks was not employed as a state treasurer or in any way involved with the administration of the Unclaimed Property Act when either of these properties were reported and remitted. So just on that ground, she should be dismissed from the case entirely. Is there anybody else that remains? Terry Stanton, he was employed in managing the unclaimed property division for the second, when the 2018 property was reported. Did the court resolve an argument about Eubanks? We raised it. She didn't reach it. The court did not. But it's a matter of public record when Rachel Eubanks was employed. Is it just a matter of substituting a different party? If that ends up being the result, just indicating that Rachel Eubanks, she's being sued in her personal capacity. She's not and was not involved in the administration of the act whatsoever. So I apologize for asking this factual question, but if you could clarify. So the principal has been returned to O'Connor?  And so the only question is the interest? Correct. And the question that we remanded was whatever due process principles apply, were they followed? Correct. And then opposing counsel amended his brief that the principal argument. So we had to address both. That's procedurally yes. Okay. Thank you. With that, other than that, I would respectfully ask that this court affirm. Thank you. Thank you. I have two quick corrective points to make from mistakes. Brother counsel just made. He indicated that the holders supposedly sent some notice. Exhibit S attached to the response to the motion for summary judgment below. Says that he received no notice whatsoever and it wasn't two holders. It was seven of them. None of the seven holders sent notice. That's because the holders aren't sending any notices to anybody in the state of Michigan. I thought there were only two holders for O'Connor. That's when we started the case, there was the two. And then when we made the claim for the principal back from them, two of the states said, oh, we've got five more for you too that we didn't tell you about. And I think the reason for that is they don't publish them, as he just indicated, is that they don't put anything under $50 in their notices that they send out on the website or in publication. So we found five more that Dr. O'Connor was entitled to receive beyond just the first two. And he received notice on none of them. Why is he not getting the property himself? I mean, if it's a check, according to your opponent, the holder sent him a check and he didn't cash the check. Is that a fair statement of the facts? No. No? What we think has happened is, is the holders don't want to pay the expense of producing the state's notice for them, and they're just not doing it. And they're just handing over these small amounts of money over to the state, and the state takes them, and the state makes money on holding this property for long periods of time. Dr. O'Connor is the type of – Is there evidence in the record that they sent him a check? No. Actually, the answer from the state was we have no evidence that they sent any notice whatsoever from the holders. None of them, none of the seven. So the holders are not in this case. Correct. The holders are not responsible for sending the state's due process. The state's required to give due process, and if the state is relying on the holders to fulfill that as some sort of delegated task, then they're bound by the shortcomings that that entity did. At least that's my view on this. Maybe the devil is in the facts here, that if what it is is some holder has purportedly sent a check to O'Connor, reflecting O'Connor's valuable property that the holder has, and O'Connor didn't cash the check, then the theory of the state is that the sending of the check constitutes notice? Is that – Except the record doesn't reflect any – I was just going to – that was the second point. Everything he said about that is – nothing is reflected in the record that that happened. He just simply made that statement here today without any factual basis or any evidence to under-support that. Dr. O'Connor's affidavit said, I got nothing from any of these holders whatsoever, checks or otherwise. So this is just something the state is trying to create some due process here, some kind of process it can hopefully put its hooks on. But would you – on Judge Moore's question, just assume the facts for a second, that they actually did send it. Would that be sufficient process? We do not believe so, because the reality is that Dr. O'Connor did not receive any notice of that, and if the holders, in fact, had noticed that the delivery of that was unsuccessful, which would presumably the non-filing of the check, I think you would have a Jennifer v. Flowers situation, where you would have notice of actual shortcoming of process. If I – So you can have one minute, because we've used up your rebuttal. Thank you. Wonderful questions. The only other point I would like to make very shortly on this is to say, this is the part that's been the most frustrating part of this, is the statement – the phrase that Brother Counsel just used. He said, well, this is a custodial escheatment. There is no such thing as a custodial escheatment. You either have a custody, which is a trust or a fiduciary-like relationship, or there's escheatment, which is where the state becomes the full and complete owner of the property. There's no in-between on these. And I would point this court – if I could leave this court with nothing else to look at, is look at page 10 of my reply brief. The state's own statement, which I think they should be stopped from arguing against, is to say Treasury, meaning the unclaimed property program, takes custody of the property but never assumes ownership. And yet they're up here claiming they're taking some sort of ownership right or escheatment right, because escheatment is ownership transfer to the state. They're claiming some sort of ownership right, and they can't. I think what this court – I would ask this court to do would be is we need to decide – I think if this court – if I could implore this court to do anything today with this court case, where we're postured at right now would be is this. Determine that we don't know exactly – the District Court below did not decide precisely what the property interest is in this case. Hence, Texaco, because this is an escheatment, not an abandonment, which is outlined in Dr. O'Connor's brief or affidavit on this, that this case get remanded and treat this as a more robust analysis as to what the property interest is and when was it deprived. We're asking you, this panel, to do too much with too little of what was actually decided below. Thank you. Thank you. Thank you both for your argument, and the case will be submitted.